## STATE EX REL. P. A. STORTROEN v. WILLIAM LINCOLN.[1]

June 2, 1916.

Nos. 19,634—(65).

**Statute — when it takes effect.**

1. A statute enacted without the usual declaration as to the time it shall take effect, but which acts upon certain specified classes or persons at different dates, as to some from the date of enactment and as to others at a future date, goes into effect as an entirety, and at the time prescribed by law for the taking effect of statutes after approval by the Governor.

**Salary act — special law.**

2. Chapter 423, Sp. Laws 1891, fixing the salary of the county officers of Otter Tail county, *held* to have taken effect and become a law prior to the amendment of section 33, art. 4, of the Constitution in 1892, by which special legislation upon the subject matter of that statute was prohibited.

**Same — not repealed by implication.**

3. The special act was not repealed by implication, by chapter 292, Laws 1895, nor by chapter 294, Laws 1903.

**Same — not modified by 1903 act.**

4. Chapter 294, Laws 1903, was a repeal in part of the special act, but was not a modification thereof within the meaning of section 33, art. 4, of the Constitution, wherein it is provided that special laws may be repealed but shall not be amended, extended or modified.

**Constitution — modification of statute.**

5. The word "modify" as used in that section of the Constitution must be construed as synonymous with "enlarge" and "extend," and a statute which removes or takes from a special statute a distinct and severable part is not a modification thereof.

Upon the relation of E. A. Stortroen the district court for Otter Tail county granted its alternative writ of *mandamus* commanding William Lincoln, as county auditor of that county, to execute and deliver to relator a warrant on the county treasurer for the payment of his salary as county

[1]Reported in 158 N. W. 50.

treasurer and indebtedness of $1,750, in accordance with Laws 1905, c. 292, and a warrant on the county treasurer for the payment of salary and indebtedness of $5,600 in accordance with that chapter, or show cause why he had not done so. ` The respondent made return and the matter was heard. upon stipulated facts by Roeser, J., who made findings and discharged the writ. From the judgment entered pursuant to the order for judgment, relator appealed. Affirmed.

Brown & Guesmer, for appellant.

Anton Thompson and Gunderson & Leach, for respondent.

Brown, C. J.

For reasons satisfactory to the legislature, into which we have no right to inquire, it was deemed advisable and proper expressly to prescribe and limit the salary and fees of certain officers of the county of Otter Tail, and to that end chapter 423, p. 1032, Sp. Laws 1891, was enacted. By that act the salary of the county treasurer was fixed at $1,600 a year, and that of other county officers as therein prescribed. Relator herein was duly elected as county treasurer at the general election of 1910, re-elected in 1912, and again in 1914, and is now discharging the duties of his office under this last election. He accepted the salary as fixed by the special act during his entire term of service, except for the year 1915, and since the commencement of this proceeding. In August, 1915, he brought this proceeding to compel the issuance to him of county warrants, as and for his salary as county treasurer, upon the basis of the salary as prescribed by chapter 292, p. 686, Laws 1895, for the time served during the year 1915, and for the difference between what was paid under the special salary act and that prescribed by said chapter 292, for the years 1911 to 1914 inclusive. Relator's right to the salary claimed was put in issue by respondent in his answer to the alternative writ. On the trial below the court held the special salary act valid and the exclusive measure of relator's compensation, and the alternative writ was discharged and the proceeding dismissed. Judgment was entered accordingly and relator appealed.

It is contended by relator: (1) That the special salary act never became a law of the state, and is unconstitutional, inoperative and void; (2) that if the act be held valid and in force from the date of its approval by the Governor, it was repealed by implication by chapter 292, p. 686, Laws

1895; and (3) if so in force and not repealed by that statute, that it was repealed by chapter 294, p. 518, Laws 1903.

While the questions presented are worthy of serious consideration, and have been so considered, we are unable to concur in either of relator's contentions. We consider the questions in their order.

1. The special act was duly passed by the legislature and was approved by the Governor on April 6, 1891. The act does not conclude with the usual declaration: "This act shall take effect and be in force from and after its passage," but instead thereof concludes as follows: "This act shall not apply to the salary or fees of any officer named in sections one (1) and three (3) thereof until from and after the first Monday in January, 1893." The act imposed upon the sheriff of the county certain duties to be performed by him during the years 1891 and 1892, in reference to keeping an account of the fees received by him and expenditures made in his official capacity. All inconsistent statutes were expressly repealed.

At the session of the legislature at which the statute was enacted, there was proposed for submission to the people for adoption or rejection at the November, 1892, general election, an amendment to the Constitution, the purpose of which among other things was to prohibit special legislation of the character of the special act here in question; it being therein provided that, after the adoption of the amendment, there should be no special statutes fixing the compensation of county officers. The amendment was adopted at the 1892 election, and became a part of the Constitution prior to the first Monday of January, 1893, the date on which relator contends the special salary act was designed by the legislature to become operative and in force. And it is claimed that by reason of this situation, the intervention of the constitutional amendment between the date of the passage of the act and the time it was to take effect, the special act was a violation thereof, because it deals with the prohibited subject, and is unconstitutional and void.

There is force and merit to relator's contention, if his theory of the time the act took effect be conceded. But his claim in this respect cannot well be admitted. The special act has remained undisturbed for nearly a quarter of a century. It has been acted upon by the public, and by all who during that period of time have held public office in Otter Tail county.

Its validity was first questioned in this proceeding. Every statute is presumed constitutional, and the presumption should strengthen with the passing of time during which the statute remains unchallenged and is acted upon by the people and acquiesced in by those who are affected by its provisions. In the face of such long acquiescence courts should hesitate before declaring the statute invalid. If there is a fair doubt, and the language of the statute be susceptible of a construction consistent with its constitutionality, that doubt and that construction should be resolved in its support and the statute sustained. 1 Sutherland, St. Const. § 82; Cameron v. Chicago, M. & St. P. Ry. Co. 63 Minn. 384, 65 N. W. 652, 31 L.R.A. 553. The language of this statute, relied upon by relator in support of the claim that it did not go into effect until after the adoption of the constitutional amendment, is "that this act shall not apply to the salary or fees" of certain of the officers affected, "until from and after the first Monday in January, 1893." We think this language might well be construed as simply excluding from the operation of the statute the then incumbents of the several offices, and not as postponing the time when the statute should take effect and be in force. It is quite apparent that, in the enactment of the statute, the legislature had in mind that all such incumbents became candidates and were elected upon the basis of the general salary statutes applicable alike to this and all other counties of the state, and, to avoid an appearance of legislating adversely to them personally, it was no doubt thought proper to exclude them from the act during the term they were then serving. A somewhat similar statute was so construed in Sudbury v. Board of Commrs. of Monroe County, 157 Ind. 446, 62 N. E. 45. Such a construction comports with fairness, in view of the particular situation, is consistent with what might well be done in the enactment of legislation affecting private rights of this kind, and is the reasonable interpretation as to what was then intended.

But there is another ground upon which the statute may well be upheld. As heretofore stated a part of the statute took effect immediately upon the approval by the Governor. That part, section 4, imposed certain specific duties upon the sheriff in respect to his accounts, and required him to make and file quarterly reports with the county auditor during the years 1891 and 1892. The operation of the statute in this particular was not postponed but took effect upon approval by the Governor. The rule

applicable to such a situation is that where a statute acts upon certain specified classes or persons at different times, in .part from the date of enactment and in part at a future date, it goes into effect and becomes a law in its entirety as of the date of its passage and approval. State v. Newbold, 56 Kan. 71, 42 Pac. 345; Board of Commrs. of Miami County v. Hiner, 54 Kan. 334, 38 Pac. 286; Hopkins v. Scott, 38 Neb. 661, 57 N. W. 391; State v. Stuht, 52 Neb. 209, 71 N. W. 941. Since in this instance the statute contained no provision to the effect that it should take effect from and after its passage, it necessarily took effect as to section 4 at least 30 days after the approval by the Governor. Section 2, c. 4, G. S. 1878. The statute could not well go into effect by instalments, and the conclusion necessarily must be that it took effect as an entirety, with the reservation as to present officers. We so hold. In this view of the question the California authorities cited and relied upon by relator are not in point. Peachey v. Board of Suprs. of Calaveras County, 59 Cal. 548; People v. Whiting, 64 Cal. 67, 28 Pac. 445.

2. The second contention is that the act, conceding that it became effective as a law prior to January, 1893, was repealed by chapter 292, p. 686, Laws 1895. That was a general statute and prescribed the salary of the auditor and treasurer of every county in the state having a population of more than 40,000 and less than 100,000. It had no application to Otter Tail county at the time of its passage, for that county did not then have a population exceeding 40,000. It has since come into and is now within that class. The claim of relator that it now controls the question of his salary cannot be sustained, unless we are to overrule several decisions heretofore rendered in cases involving conflicting general and special statutes, where substantially the same question was passed upon. We have held, and the ruling is in accord with the authorities generally, that a subsequently enacted general statute will not operate as a repeal by implication of a prior special act, unless an intent to repeal is made manifest by the subsequent statute. The question first came before us, after the amendment of the Constitution, in State v. Egan, 64 Minn. 331, 67 N. W. 77, and the rule there stated was followed in State v. Baker, 114 Minn. 209, 130 N. W. 999; State v. Peter, 101 Minn. 462, 112 N. W. 866; and State v. Lindquist, 77 Minn. 540, 80 N. W. 701. In the first case referred to chapter 206, p. 343, Laws 1893, was under consideration in con-

nection with the contention that the effect thereof was to repeal all special statutes upon the same subject. That statute provided that, whenever any assessment for local improvements undertaken by any municipal corporation of the state should be set aside, the cost of such improvement should be reassessed in the manner provided by the act. It was held, though the language of the statute was general and applied on its face to *every* municipal corporation, that it did not repeal the special statutes applicable to the city of St. Paul. The same situation was presented in Peter's case, where there was a conflict between the language of the Revised Laws 1905, and existing special laws applicable to Ramsey county, involving the number of county commissioners to be elected therein. The special acts were held not repealed. There was no repealing clause appended to the statute in either of those cases. In the case at bar the statute singles out two special acts and expressly repeals them, leaving the inference that there was no intention to repeal any other special law. Had there been a general repealing clause of all inconsistent statutes, the intention to repeal all conflicting special laws would in a measure be apparent, and probably justify the conclusion of an intentional repeal. State v. Sullivan, 62 Minn. 283, 64 N. W. 813. But that result does not necessarily follow either where the subsequent general law has no repealing clause or where, as in this instance, the repealing clause is expressly limited to certain specified special acts. The inference from the express reference to the specified acts is that the legislature did not intend to impair any other special act dealing with the same subject matter.

3. The last contention is that the special act was repealed by chapter 294, p. 518, Laws 1903. The point is not sustained. That statute dealt exclusively with the fees of sheriffs, and had no relation to the salary of other county officers. It repealed all inconsistent statutes, and the repeal of the special act in question insofar as it involves the fees of the sheriff may be conceded. But relator argues that the effect of chapter 294 was a modification of the special act, in that it removed the sheriff from its provisions, and since by the Constitution special laws cannot be amended, extended or modified (section 33, art. 4), the whole of chapter 423 must fall as totally repealed. If counsel are right in the contention that the effect of chapter 294 was a modification of the special act, it would necessarily follow that that act, rather than the special act, would fall, for as

so construed it would amount to an attempt to modify a special law in violation of the constitutional prohibition that such statutes shall not be amended, extended or modified.  But it should not be construed as a modification of the special act, but rather as a partial repeal thereof.  That this may be done was in effect held in State v. Sullivan, supra, and State v. Copeland, 66 Minn. 315, 69 N. W. 27, 34 L.R.A. 777, 61 Am. St. 410. The word "modify" as here used must be construed as synonymous with "extend" or "enlarge," and this particular provision of the Constitution as prohibiting such amendments of special laws as will expand or give to the special law greater scope and effect, or which attempt to remedy defects therein.  An act which removes and takes from a special act a distinct and severable part is not a modification thereof within the meaning of the Constitution.

Judgment affirmed.